UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORTH ATLANTIC OPERATING
COMPANY, INC., and NATIONAL
TOBACCO COMPANY, L.P.,

                     Plaintiffs,

      v.                         Case No. 16-12076
                                 HON. TERRENCE G. BERG
WALTER C. SCOTT, et al.,           HON. DAVID R. GRAND

                     Defendants.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND OTHER RELIEF (DKT. 3)

Plaintiffs North Atlantic Operating Company, Inc., and National Tobacco Company, L.P., the exclusive manufacturers, distributors, and licensees of ZIG-ZAG® cigarette paper products in the United States, are seeking a temporary restraining order against Defendants, whom they allege are engaged in manufacturing, distributing, or selling counterfeit ZIG-ZAG® cigarette paper products. (*See* Dkt. 1 at ¶¶ 1-4.)  In a Complaint filed together with their motion seeking injunctive relief, Plaintiffs allege that Defendants' actions constitute: (1) trademark counterfeiting and infringement under 15 U.S.C. § 1114; (2) false designation of origin and trademark and trade dress infringement under 15 U.S.C. § 1125(a); (3) copyright infringement under the Copyright Act of 1976; (4) improper use, reproduction, or imitation under Michigan Compiled Laws § 429.42; and unfair competition under (5) Michigan Compiled Laws § 445.903 and (6) Michigan common law. (*Id.* at ¶ 6.)

Before the Court is Plaintiffs' motion under Federal Rule of Civil Procedure 65(b) for a preliminary injunction, temporary restraining order, asset restraining order, expedited discovery order, and order permitting service by alternative means, filed on June 9, 2016. (Dkt. 3.) Plaintiffs also request expedited discovery as to Defendants Orksel Inc., RazoDazzle, and TooHotGlass's Amazon Prime inventories of ZIG-ZAG® Orange products. (Dkt. 17, p. 2.) The Court held an ex-parte hearing in this matter on Wednesday, June 29, 2016, in Detroit, Michigan.

Having reviewed the pleadings, supporting affidavits, and other records submitted in support of the motion, and carefully considered the evidence presented at the ex-parte hearing, Plaintiffs' motion will be **GRANTED**. The Court will also order that the record in this case shall remain sealed until **Thursday, July 7, 2016**.[1]

The Court is satisfied that, in the absence of an ex parte order, Defendants are likely to change, destroy, or delete evidence related to any counterfeit activity, including existing online marketplace accounts and associated records, and transfer or hide any assets from their financial accounts, including PayPal accounts. The requested ex parte orders will ensure that Defendants' records and assets will be preserved in their accounts, and that Defendants will be prevented from changing or deleting their online identities prior to the holding of a hearing on this matter within fourteen (14) days.

---

[1] At the hearing, the parties requested 10 days accomplish service, and the Court indicated it would consider this request. Upon reflection, the Court will allow 6 days for service to be accomplished rather than 10 days because service by electronic means is being authorized. Also, this shorter period will obviate any need to extend the temporary restraining order, which shall expire after 14 days.

Moreover, these orders will issue without notice pursuant to Federal Rule of Civil Procedure 65(b) because Plaintiffs have presented sufficient specific facts in their pleadings (Dkts. 1, 3), in the supporting declarations of John Hood (Dkt. 5), Melissa McLaughlin (Dkt. 4, pp. 1-7), and Steven T. Gnadinger (Dkt. 10), and at the ex parte hearing to show that immediate and irreparable injury, loss, or damage will result to Plaintiffs before Defendants could be heard in opposition. As other courts have recognized, proceedings against those who deliberately traffic in counterfeit merchandise are often ineffective if notice is given to the adverse party prior to service. *E.g.*, *Lorillard Tobacco Co. v. Applewood Party Store, Inc.*, No. 05-70913, Dkt. 12 (E.D. Mich., Mar. 11, 2005) (granting an ex parte seizure order and temporary restraining order without notice to adverse party because adverse party was likely to destroy, move, or hide counterfeit cigarettes if notice were given.)

## I.  LEGAL STANDARD

Plaintiffs have filed this motion pursuant to Federal Rule of Civil Procedure 65, requesting that the Court grant a temporary restraining order and other relief without notice. Pursuant to 15 U.S.C. § 1116(a), this Court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office...." Rule 65(b) of the Federal Rules of Civil Procedure provides the Court with authority to issue a temporary restraining order without notice:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears

> from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed. R. Civ. P. 65(b).

The Rule is designed to ensure that the Court only consider the extraordinary remedy of a temporary restraining order without notice when certain procedural safeguards are met showing that injury to the movant is immediate and irreparable, and the reasons for delaying notice to the opposing party are well articulated. *See id.* Accordingly, this Court held an ex parte hearing requiring Plaintiffs to present evidence of irreparable and imminent injury and to provide a clear and convincing rationale for entering an order without prior notice. The Court has also considered factors such as the likelihood of success on the merits, the harm to the non-moving party, and the public interest. *See* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 2951 at 507-08; *see also McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir.1997) (en banc). In light of the evidence presented, both at the hearing and in the pleadings and attachments filed under seal, the Court finds that Plaintiffs have satisfied the requirements for an ex parte temporary restraining order and for the other relief they seek.

## A. The Certification Requirement is Met

With regard to the certification requirement, Plaintiffs have not certified that they have made any effort to give notice to Defendants regarding this action. Instead, Plaintiffs urged at the hearing that no such notice be given in this instance

because time is of the essence due to the ongoing trademark infringement and counterfeiting activities. Plaintiffs assert that Defendants will "evade process" and therefore wish to minimize the risk that Defendants will destroy evidence of their counterfeit distribution activities or attempt to hide their assets gained as a result of these activities before this case can be litigated. (Dkt. 3, ¶ 6.)  If assets are transferred or hidden and transaction records destroyed, Plaintiffs argue that their damages will be difficult and perhaps impossible to calculate. (*Id.* at 24-25.) Plaintiffs support these allegations with testimony from private investigator John Hood, who supervised the investigation into the alleged counterfeit activities. (Dkt. 5, ¶¶ 206-213.) In light of these reasons, the Court finds sufficient support for Plaintiffs' claim that notice should not be required in this case. The certification requirement is therefore met.

## B. Plaintiffs have Shown Immediate and Irreparable Injury

Plaintiffs have also demonstrated that they will suffer immediate and irreparable injury if ex parte relief is not granted. Hood verified at the motion hearing the circumstances and timing of each controlled buy of counterfeit product that he made from each Defendant. These controlled buys were made online or in-person. At the hearing and in their brief, Plaintiffs emphasized the immediate and irreparable harm this counterfeiting activity does to their reputation and the goodwill they have built with their clientele since 1938.

According to Plaintiffs, the quality of the counterfeit products is inferior in many respects and potentially unsafe. The counterfeit products use bad-tasting and

5

inferior glue, and the paper has a much faster burn rate, resulting in consumer complaints. (Dkt. 10, ¶¶ 82-92.) Consumers who purchase counterfeit product, believing it to be authentic, have posted publicly-available product reviews online in which they attribute defects in the counterfeit products to Plaintiffs' products. (*Id.* at ¶¶ 84-88.) Others complain directly to Plaintiffs. (*Id.* at ¶ 89-90.) In most cases, however, consumers will not even file a complaint but will instead simply take their business elsewhere. This type of harm cannot be quantified financially and is difficult to prevent when most consumers do not voice their complaints to Plaintiffs before switching brands.

Moreover, as Plaintiffs explain, counterfeit sellers impact Plaintiffs' ability to control and offer stable pricing to their longstanding wholesale customers. (Dkt. 3, pp. 18-20.) This is both an economic and reputational harm. Counterfeit distributors and sellers price their goods well below the market rate, hurting the business relationship between Plaintiffs and those wholesalers purchasing from them directly at the market rate. (*Id.*) These wholesalers may decide to purchase a cheaper brand of genuine cigarette paper products rather than compete with distributors and retailers selling counterfeit versions of Plaintiffs' products at below-market rates. Restoring trust and goodwill with such longstanding clients who require reliable pricing requires significant time and investment on Plaintiffs' part.

The Sixth Circuit has held that possible risk to reputation or consumer confusion is sufficient to establish irreparable and immediate harm. In the context

6

of an infringement action, "[a] finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) (citations omitted). Plaintiffs have thus shown that these counterfeiting activities are causing immediate and irreparable harm to their reputation and their business.

## 1. Plaintiffs are Likely to Succeed on the Merits

In regard to the additional factors courts consider when determining whether to issue the requested relief without notice, this Court finds that Plaintiffs have satisfied these requirements. First, Plaintiffs have made an adequate showing of likelihood of success on the merits. To establish a claim for trademark infringement under § 1114, Plaintiffs must show: (1) ownership of a valid, protectable trademark; (2) that Defendants used the mark in commerce and without the registrant's consent; and (3) there is a likelihood of consumer confusion. 15 U.S.C. § 1114(1).

Here, Plaintiffs are the exclusive holders of the trademarks at issue and Defendants do not have permission to use Plaintiffs' trademark. (Dkt. 10, ¶¶ 7-13.) Because trademark infringement is a strict liability offense, Defendants are liable whether or not they were aware of the counterfeit nature of the products they sold. 15 U.S.C. § 1114(1)(a). Moreover, when a Defendant uses a counterfeit mark, consumer confusion is presumed and Plaintiffs' reputation, goodwill, and sales suffer as a result. *Ford Motor Co. v. Lloyd Design Corp.*, 22 Fed. App'x 464, 468 (6th Cir. 2001).

The Court has examined genuine trademarked products, and compared them to an example of the counterfeit products purchased from one of the Defendants. It is clear that the counterfeit product aims to be a direct copy of all aspects of the genuine article, from the packaging, to the logo of the manufacturer and the writing and color on the box. The consumer would need to be an expert to tell one from the other.

**2. Injunctive Relief is in the Public Interest**

As to the question of whether immediate injunctive relief is also in the public interest, the record before the Court supports a finding that because such relief will reduce the risk of consumer confusion and deception by restricting the flow of counterfeit and potentially inferior products into the market. As mentioned above, at the hearing, Plaintiffs presented an authentic carton of their product as well as an allegedly counterfeit version of the same purchased from one of the Defendants. The differences were subtle (color, size, font, watermark, and so on) and difficult to discern. Plaintiffs also explained that the counterfeit products tend to burn at a faster rate, risking burns to consumers, their clothing, and other property. Although Plaintiffs have presented no evidence that the counterfeit products are inherently dangerous, customer confusion alone is a significant harm which is clearly against the public interest and weighs in favor of issuing the order. *See Blockbuster Entm't Grp., Div. of Viacom, Inc. v. Laylco, Inc.*, 869 F.Supp. 505, 516 (E.D.Mich.1994).

### 3. Harm to Plaintiffs Outweighs any Harm to Defendants

Finally, any harm to Defendants who are manufacturing, distributing, or selling counterfeit products will not be outweighed by the harm Plaintiffs will suffer without the requested relief. Defendants engaged in such activity have no legal right to do so in the first instance while Plaintiffs will certainly suffer a diminishing trademark value and harm to their reputation among consumers, wholesalers, and distributors. As Steven T. Gnadinger testified in his declaration and at the hearing, Plaintiffs have received complaints from consumers who were deceived into purchasing counterfeit ZIG-ZAG® products and attributed their defects to Plaintiffs. (Dkt. 10, ¶¶ 82-91.) When customers are disappointed in the quality of what they believe to be a ZIG-ZAG® product, it is likely that they will seek an alternative brand, injuring Plaintiffs' reputation and sales – perhaps permanently. Comparatively, the Defendants' conduct is only temporarily restrained, and granting the requested relief will not prevent Defendants from engaging in any legitimate business transactions. In sum, denying the requested relief will cause more harm to Plaintiffs than granting the requested relief will cause for Defendants. Injunctive relief is thus necessary to prevent further consumer confusion and further damage to Plaintiffs' reputation, goodwill, and sales.

## C. Plaintiffs' Request for Other Relief will be Granted

In addition to an ex parte temporary restraining order, Plaintiffs also request an asset restraining order, an expedited discovery order, and an order

permitting service by alternate means. For the reasons stated below, the Court will grant this additional ex parte relief.

### 1.  Asset Restraining Order will be Granted

Plaintiffs request an order restraining Defendants' assets, including any assets in Defendants' Paypal and other payment processing service provider accounts, to ensure an accurate accounting of any profits made by selling counterfeit goods. (Dkt. 3, pp. 31-32.) Such orders have been granted ex parte to prevent Defendants from transferring or otherwise hiding their financial assets before the order is issued. *See United States SEC v. Bravata*, No. 09-12950, 2009 WL 2245649, *2 (E.D. Mich. Jul. 27, 2009) (ordering ex parte asset restraint); *Microsoft Corp. v. Jun Yan*, No. 10-00162, Dkt. 29, pp. 7-8 (D. Conn. Feb. 18, 2010) (freezing Defendants' Paypal accounts to prevent transfer of assets). In light of the risk that Defendants will attempt to transfer or hide their assets derived from counterfeiting activities, the Court finds that such an order is necessary here to maintain the status quo and preserve Plaintiffs' right to an equitable accounting.

### 2.  Limited, Expedited Discovery will be Permitted

Plaintiffs further request to serve limited, expedited discovery upon necessary third parties in order to establish with greater certainty Defendants' identities and addresses as well as the locations of any counterfeiting operations. (Dkt. 3, pp. 32-34.) Pursuant to Federal Rule of Civil Procedure 26(d)(1), parties can begin discovery before their Rule 26(f) conference if a district court authorizes them to do so upon a showing of good cause. Fed. R. Civ. P. 26(d)(1). Within this

Circuit, district courts have found good cause for granting expedited discovery when the true identities of the defendants are unknown, when the moving party alleges infringement, when the scope of the discovery sought is narrow, and when expedited discovery would substantially contribute to moving the case forward. *See, e.g., Arista Records, LLC v. Does 1-4*, 2007 WL 4178641, *1 (W.D. Mich. Nov. 20, 2007).

Although Plaintiffs have thus far identified Defendants only by their eBay, Amazon, Bonanza, and Rakuten usernames, and by the names that appear on PayPal receipts and return address labels, Plaintiffs cannot confirm that these names correctly identify the individuals truly responsible for operating the respective accounts. (Dkt. 3, p. 33; Dkt. 5, ¶¶ 17-18.) Plaintiffs wish to serve discovery upon Defendants' third-party providers requesting: (1) the names and addresses of Defendants and the locations of their operations, including identifying information associated with Defendants' eBay accounts, Amazon accounts, Bonanza accounts, Rakuten accounts, PayPal accounts, and any other online marketplace accounts, merchant accounts, and payment accounts; (2) any and all known Internet websites on which Defendants trade in ZIG-ZAG® products; (3) any and all known domain names registered by Defendants; and (4) any and all financial accounts owned or controlled by Defendants. (Dkt. 3, pp. 33-34.)

Given the limited scope and time-sensitive nature of this discovery request, and Plaintiffs' offer to post a $10,000 bond with the Court to compensate for any

damages suffered as a result of any wrongful restraint under this order, the Court will grant this relief.

### 3. Limited, Expedited Discovery of Certain Amazon Prime Inventories will be Permitted

Plaintiffs request expedited discovery as to Defendants Orksel Inc., RazoDazzle, and TooHotGlass's Amazon Prime inventories of ZIG-ZAG® Orange products. (Dkt. 17, p. 2.) This request is supported by a supplemental declaration by Hood and evidence of the purchases made from these Defendants using the Amazon Prime service. (*Id.* at Ex. A.) Plaintiffs believe that the counterfeit ZIG-ZAG® Orange product inventories of these Defendants are housed at two Amazon fulfillment centers in Kentucky. (Id. at 7.)

Amazon Prime is a subscription service offered by Amazon.com through which subscribers enjoy, among other perks, free and fast shipping on certain items. *See* "Amazon Prime: Fast shipping and more," www.amazon.com/Prime (last visited June 30, 2016). Amazon sellers can sell products through Amazon Prime, and those products are maintained by Amazon in inventory at Amazon fulfillment centers, and shipped from Amazon directly to the buyer. *See* "Fulfillment by Amazon - Benefits," https://services.amazon.com/fulfillment-by-amazon/benefits.htm (last visited June 30, 2016.) Plaintiff maintains that Defendants Orksel Inc., RazoDazzle, and TooHotGlass use Amazon Prime for fast order fulfillment and presented the Court with a list of specific purchases of counterfeit product from these Defendants that were fulfilled and shipped through Amazon Prime. (Dkt. 17, p. 9.)

Plaintiffs argue that expedited discovery of these Defendants' Amazon Prime inventory is essential because Plaintiffs must be able to secure these counterfeit products before they are sold to consumers. (*Id.* at 11.) Plaintiffs assert that the burden on Amazon would be light because only the inventories of ZIG-ZAG® products associated with these specific Defendants would be requested. (*Id.* at 12.) At the hearing, the Court examined the counterfeit products purchased from these seller Defendants through Amazon Prime and observed that the products were marked with a barcode that Plaintiffs argue Amazon uses to track its Prime inventory – indeed, the product webpages maintained by these seller Defendants also display how much of a particular product is "in stock" at any given time. (*Id.* at 10.) Accordingly, Amazon should be able to easily and efficiently locate and secure these inventories in its two Kentucky fulfillment centers.

Finally, Plaintiffs maintain that any burden for Amazon or these seller Defendants would be outweighed by the risk of these seller Defendants minimizing the extent of their sales in settlement negotiations, selling inferior products to Amazon customers, and depleting their inventory in an attempt to evade responsibility for their conduct. As noted above, these seller Defendants do not have a right to sell counterfeit product and being deprived of said product does not represent harm to them. Should these seller Defendants inadvertently be harmed by this discovery, Plaintiffs will post a $10,000 bond to compensate them. Given the limited scope and time-sensitive nature of this discovery request, and good cause having been shown, the Court will grant Plaintiffs this relief.

**4.   Alternative Means of Service will be Permitted**

Finally, Plaintiffs request to serve Defendants and necessary third parties with these ex parte orders via alternate means. (*Id.* at pp. 34-37.) In particular, Plaintiffs want to serve these orders by email or other online message service, or by overnight courier, to ensure that the documents are received by the proper parties. (*Id.* at 34.) Federal Rule of Civil Procedure 4 allows for flexibility in service upon Defendants to ensure that Defendants are given proper notice of an action and to eliminate unnecessary technicalities. 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1061, at 216 (2d. ed. 1987). In cases where Defendants have conducted business online, via email, or other electronic means, courts in this Circuit have permitted service of process by email and other alternative methods. *See Elcometer, Inc. v. Tqc-Usa, Inc.*, No. 12-cv-14628, 2013 WL 592660, *2 (E.D. Mich. Feb. 14, 2013); *McCluskey v. Belford High Sch.*, No. 2:09-cv-14345, 2010 WL 2696599 (E.D. Mich. Jun. 24, 2010) (permitting service by email, fax, and "live chat" on Defendants' website).

As part of their investigation, Plaintiffs frequently communicated with Defendants via email. (*See, e.g.*, dkt. 5, ¶¶ 20-201.) Service by email to these email addresses will thus ensure that every seller of counterfeit merchandise which Plaintiff is attempting to identify as a Defendant, regardless of how he or she is described in the complaint, will receive notice of this action. Moreover, because time is of the essence in this case, necessary third parties may also be served by these alternative means to ensure receipt as quickly as possible and to prevent

Defendants from being able to access, transfer, and destroy assets and evidence connected to any counterfeiting activities. Plaintiffs state that they will also personally serve the registered agents of all necessary third parties. (*Id.* at 36.) For these reasons, the Court finds that alternative service upon Defendants and necessary third parties is justified as the most efficient way of ensuring due process and serving the interest of justice while not prejudicing any party to this action.

The Court acknowledges there are stringent restrictions imposed by Rule 65 on the availability of ex parte temporary restraining orders. These restrictions "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 438-39 (1974). Although ex parte orders are necessary in certain circumstances, they must still be "restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Id.* With these limitations in mind and in light of the evidence on this record, the Court enters the following ex parte orders:

## <u>ORDER TO SHOW CAUSE</u>

**IT IS HEREBY ORDERED THAT** Defendants shall appear and show cause before this Court in **Detroit, Michigan** on **July 15, 2016 at 1:00 PM** why a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 should not be

issued, which would enjoin and restrain Defendants, their agents, their servants, their employees, and their officers, and all other persons in active concert or participation with them, pending the final hearing and determination of this action, from directly or indirectly, anywhere in the world:

1.      Importing, shipping, manufacturing, distributing, delivering, advertising, promoting, making, purchasing, offering for sale, selling, or otherwise disposing of, in any manner, any counterfeit or infringing ZIG-ZAG® brand cigarette paper products, including, but not limited to, ZIG-ZAG® 11/4 Size French Orange ("ZIG-ZAG® Orange"), or any cigarette paper products bearing:

(i)      infringing or counterfeit versions of the ZIG-ZAG® Trademarks, the NAOC® Trademarks, the NAOC© Copyright, and/or the ZIG-ZAG® Orange Trade Dress (as these terms are defined in North Atlantic's Complaint in the above-captioned action), which appear alone or in combination on all cartons and booklets of ZIG-ZAG® Orange cigarette paper products distributed by North Atlantic in the United States; and/or

(ii)     the false statement that such products are "Distributed by North Atlantic Operating Company, Inc." or otherwise under the control or supervision of North Atlantic, when they are not;

2.      Importing, shipping, manufacturing, distributing, delivering, advertising, promoting, making, purchasing, offering for sale, selling, passing off, or otherwise disposing of, in any manner, any purported North Atlantic products that are not actually produced, imported, or distributed under the control or supervision

of North Atlantic and/or approved for sale in the United States by North Atlantic, in connection with the ZIG-ZAG® Trademarks, the NAOC® Trademarks, the NAOC© Copyright, and/or the ZIG-ZAG® Orange Trade Dress, or inducing or enabling others to commit any of the aforesaid actions;

3.      Committing any acts calculated to cause purchasers to believe that counterfeit or infringing ZIG-ZAG® cigarette paper products, including ZIG¬-ZAG® Orange, originate with North Atlantic, when they do not;

4.      In any way infringing or damaging the ZIG-ZAG® or NAOC® Trademarks, the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress;

5.      Otherwise unfairly competing with North Atlantic in any way;

6.      Attempting, causing, or assisting in any of the above-described acts, including, but not limited to, enabling others in the above-described acts, or passing on information to others to allow them to do so;

7.      Destroying, altering, deleting, or otherwise disposing of any documents, records, or electronically stored information concerning the import, manufacture, distribution, advertisement, promotion, making, purchase, offer to sell, or sale of any product that has been or is intended to be sold in packaging containing the ZIG-ZAG® or NAOC® Trademarks, the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress;

8.      Forming or causing to be formed any corporation or other entity that engages in any of the above-described acts;

9.      Accessing, using, linking to, transferring, selling, exercising control over, or otherwise owning the eBay.com ("eBay") seller accounts, Amazon.com ("Amazon") seller accounts, Bonanza.com ("Bonanza") seller accounts, or Rakuten.com ("Rakuten") seller accounts shown in <u>Attachment 1</u>, or any other online marketplace account that is being used to offer, sell, and distribute, or is the means by which Defendants could continue to offer, sell, and distribute, any counterfeit or infringing ZIG-ZAG® Orange products;

10.     Accessing, using, linking to, transferring, selling, exercising control over, or otherwise owning the PayPal accounts associated with the names and email addresses shown in <u>Attachment 1</u>, or any other PayPal account or other online payment processing account linked to Defendants' above-referenced online marketplace accounts through which Defendants are or have been offering, selling, and distributing counterfeit or infringing ZIG-ZAG® Orange products; and

11.     Accessing, transferring, or disposing of any assets, subject to any Defendant's provision of accounting of any assets over $1,000 and uncontradicted documentary proof that such particular assets are not proceeds of such Defendant's counterfeiting activities.

## <u>TEMPORARY RESTRAINING ORDER</u>

Pending the hearing on North Atlantic's motion for a preliminary injunction and further order of this Court, Defendants and their principals, agents, directors, members, servants, employees, successors, assigns, and all other persons in active concert or participation with them (collectively, the "Restrained Parties"), shall,

18

upon service in the manner described below or actual notice of this Order, be immediately temporarily restrained from:

      A.     Committing any of the acts set forth in paragraphs (1) through (11) above;

      B.     Moving, altering, destroying, or otherwise disposing of any documents, records, communications, and electronic data stored within Defendants' eBay, Amazon, Bonanza, Rakuten, PayPal, Inc. ("PayPal"), and other related online marketplace and/or financial accounts, relating to Defendants' sale and distribution of ZIG-ZAG® cigarette paper products, Defendants' online merchant storefronts, or Defendants' assets and operations, or relating in any way to the manufacture, acquisition, purchase, advertisement, distribution, or sale of ZIG-ZAG® Orange, or any reproduction, counterfeit, copy, or colorable imitation of the ZIG-ZAG® Trademarks, the NAOC® Trademarks, the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress;

      C.     Accessing any online accounts used in the offering for sale or selling of ZIG-ZAG® cigarette paper products, including, but not limited to, eBay, Amazon, Bonanza, Rakuten, PayPal, and other related online marketplace and/or online financial accounts associated with each and every one of the named Defendants;

      D.     Accessing any accounts used in the transfer of money or electronic currency in connection with the sale and distribution of counterfeit ZIG-ZAG® cigarette paper products, including, but not limited to, any and all PayPal, Western Union Holdings, Inc. ("Western Union"), bank, and third party payment processing

service provider accounts associated with each and every one of the named Defendants.

**IT IS FURTHER ORDERED THAT** the Restrained Parties shall immediately turn over to North Atlantic, or any person or entity designated by them, all counterfeit ZIG-ZAG® Orange cigarette paper products, or any products bearing counterfeit or infringing versions of the ZIG-ZAG® or NAOC® Trademarks, the NAOC© Copyright, the ZIG-ZAG® Orange Trade Dress, and/or the false statement that such products are "Distributed by North Atlantic Operating Company, Inc.", in their possession custody or control.

**IT IS FURTHER ORDERED THAT** the Restrained Parties shall produce to North Atlantic, within fourteen (14) days after service of this Order, a written report under oath providing:

1.   Their true name and physical address;

2.   All websites and online marketplace accounts on any platform that they own and/or operate;

3.   Their financial accounts, including all PayPal accounts;

4.   A list summarizing the dates, quantities, names, and addresses of all suppliers from whom they have purchased ZIG-ZAG® Orange over the preceding twenty-four (24) months and a copy of all correspondence, including emails or text messages, with these suppliers; and

5.     A list summarizing the dates, quantities, names, and addresses of all customers to whom they have sold ZIG-ZAG® Orange over the preceding twenty-four (24) months.

**IT IS FURTHER ORDERED THAT** any third party in privity with or providing services to any of the Defendants, or in connection with any of Defendants' online merchant accounts or related financial accounts, including, but not limited to, eBay, Amazon, Bonanza, Rakuten, Facebook, Inc. ("Facebook"), internet service providers, web hosts, sponsored search engine or ad-word providers, PayPal, Alibaba.com ("Alibaba"), Western Union, banks, and other payment processing service providers (collectively, "Third Party Providers") shall, within five (5) days after actual notice of this Order, provide to North Atlantic expedited discovery, including copies of all documents and records in such person's or entity's possession or control relating to:

1.     The identities and addresses of the Restrained Parties, and the locations and identities of Defendants' operations, including, without limitation, identifying information associated with Defendants' eBay accounts, Amazon accounts, Bonanza accounts, Rakuten accounts, PayPal accounts, and any and all other online marketplace accounts, merchant accounts, and payment accounts;

2.     Any and all known Internet websites on which Defendants trade in ZIG-ZAG® cigarette paper products;

3.     Any and all known domain names registered by Defendants or any of them;

4.      Any and all financial accounts owned or controlled by the Restrained Parties, including such accounts residing with or under the control of any banks, savings and loan associations, merchant account providers, payment processors and providers, credit card associations, or other financial institutions which receive or process payments or hold assets on Defendants' behalf, including, without limitation, PayPal, Western Union, Money Gram International, Visa, MasterCard, Discovery, and American Express.

**IT IS FURTHER ORDERED THAT** Third Party Providers, specifically including, but not limited to, eBay, Amazon, Bonanza, Rakuten, and PayPal, shall, within twenty-four (24) hours after actual notice of this Order:

A.      Freeze all access of each and every Defendant to any and all of their accounts associated with the unauthorized trade in ZIG-ZAG® cigarette paper products, by temporarily disabling these accounts and making them inactive and non-transferable pending further order from this Court;

B.      Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit or infringing ZIG-ZAG® cigarette paper products; and

C.      Take all steps necessary to prevent links to the eBay, Amazon, Bonanza, or Rakuten seller accounts identified in Attachment 1 from displaying in search results, including, but not limited to, removing links to the these accounts from any search index.

**IT IS FURTHER ORDERED THAT** Defendants and any Restrained Party who has actual notice of this Order shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

**IT IS FURTHER ORDERED THAT** Third Party Providers, specifically including, but not limited to, PayPal, banks, payment processors, and other financial institutions who receive actual notice of this Order, shall immediately locate all accounts and funds owned or operated by or otherwise associated with Defendants and each of their merchant websites, including, but not limited to, any PayPal accounts connected to the names listed in <u>Attachment 1</u> hereto, and that such accounts be frozen, disabled, restrained and enjoined from transferring or disposing of any money or other of Defendants' assets, without prior approval of the Court, except as to a Defendant that files with the Court and serves upon Plaintiffs' counsel:

1.      An accounting of any of all of such Defendant's assets located in the United States having a value of one thousand dollars ($1,000) or more, and the location and identity thereof; and

2.      Uncontradicted documentary proof accepted by North Atlantic (such acceptance will not be unreasonably withheld) that particular assets are not proceeds of such Defendant's counterfeiting activities, in which case those particular assets shall be released to such Defendant.

**IT IS FURTHER ORDERED THAT** upon three (3) business days' written notice to the Court and North Atlantic's counsel, any Defendant may, upon proper showing, appear and move for the dissolution or modification of the provisions of this Order concerning the restriction upon transfer of Defendants' assets.

**IT IS FURTHER ORDERED THAT** good cause having been shown, North Atlantic may serve upon all Defendants and upon any necessary third party the documents initiating this matter, including the Complaint, Summons, Ex Parte Motion for Temporary Restraining Order and supporting Brief thereto, Supporting Declarations of John Hood, Steven T. Gnadinger, and Melissa C. McLaughlin, Motion to Seal and Order thereon, Plaintiffs' Rule 7.1 Statements, and the Orders herein, by email or other electronic means, and/or by overnight courier, when practicable, to the degree necessary to ensure and effectuate service.

**IT IS FURTHER ORDERED** that North Atlantic post an undertaking within five (5) business days of the entry of this Order with the Clerk of the Court in the form of a bond, cash or check in the sum $10,000.00 as security for the payment of such costs and damages as may be incurred or suffered by any party as a result of a wrongful restraint hereunder.

**IT IS FURTHER ORDERED THAT** the Temporary Restraining Order shall remain in effect until the date for hearing on the preliminary injunction set forth above, or such further dates as set by the Court, unless Defendants stipulate, or do not object, to a preliminary injunction.

## OPPOSITION, REPLY PAPERS, AND SERVICE

**IT IS FURTHER ORDERED THAT** service of the Summons and
Complaint and this Temporary Restraining Order and copies of the papers in
support thereof, shall be made on Defendants **within six (6) days** of the date of the
entry of this Order, that is, by **July 7, 2016**.

**IT IS FURTHER ORDERED THAT** opposition papers, if any, be filed by
the Defendants with this Court and served by personal service, notice of electronic
filing, facsimile, or email upon North Atlantic's counsel, Warner Norcross & Judd
LLP, at their offices at 45000 River Ridge Drive, Suite 300, Clinton Twp, Michigan
48038, and Venable LLP, at their offices at 1270 Avenue of the Americas, 25th
Floor, New York, New York 10020, on or before **11 DAYS AFTER DATE OF
ORDER**, that is, by **July 12, 2016** and reply papers shall be filed and served in the
equivalent manner on or before **13 DAYS AFTER DATE OF ORDER**, that is, by
**July 14, 2016**.

**IT IS FURTHER ORDERED THAT** Defendants are hereby put on notice
that failure to attend the preliminary injunction hearing scheduled herein shall
result in the issuance of a preliminary injunction, and that failure of Defendants to
respond to Plaintiffs' Motion by the date Defendants' opposition papers are due may
result in the issuance of a preliminary injunction, which shall extend through the
pendency of this action, depending on whether or not Defendants appear as directed
for the preliminary injunction hearing. The Restrained Parties shall be deemed to
have actual notice of the issuance and terms of the preliminary injunction, and any

act by any of the Restrained Parties in violation of any of the terms of the preliminary injunction may be considered and prosecuted as contempt of this Court.

**IT IS FURTHER ORDERED THAT** all papers submitted in this action shall be filed with the Clerk of Court under seal, and shall remain filed under seal until **July 7, 2016**.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  July 1, 2016

### Certificate of Service

I hereby certify that this Order was electronically submitted on July 1, 2016, using the CM/ECF system, which will send notification to each party.

By:  s/A. Chubb
Case Manager

**ATTACHMENT 1**

| Online Seller Account | Name(s) Associated with PayPal Account(s) | Associated Email Address (if any) |
|---|---|---|
| eBay Seller respect843 | Walter Scott | waltercscott@bellsouth.net<br><br>walterchristscotty@hotmail.com |
| eBay Seller zigzag_wholesale | Nir Biswa | smokesmarket@gmail.com<br><br>zigzagwholesale@gmail.com |
| eBay Seller atlantic_market | Mohammad Akbar | atlanticmarket@gmail.com |
| eBay Seller smwholesale360 | Nir Biswa | smokesmarket@gmail.com |
| eBay Seller reflectbleu | Barry Williams | theghostglitch@gmail.com |
| eBay Seller yacoubj | Michelle Abualkhair; The Crown | abualkhair@sbcglobal.net |
| eBay Seller hudlemart | Martin Hudleton; Marty Hudleston; Rolling Paper Regals; Mile High Merchants | milehighmerchant@yahoo.com<br><br>misfattoys@gmail.com |
| eBay Seller lenkoseller | Delroy Johnson | flenkoseller@gmail.com |
| eBay Seller cheepstuff65 | Burtin Parker; River City Depot | rivercitydepot@aol.com<br><br>bgparker3@earthlink.net |
| eBay Seller iluvmoney1232012 | James Cleary | melissas13ml@aol.com |

| | | |
|---|---|---|
| eBay Seller seranosh | Linet Davoodimashihi; Linet Davoodi Masihi | linn290@yahoo.com |
| eBay Seller usbigdiscountwarehouse | Nicless Cigarette Filters | ademunal@yahoo.com |
| eBay Seller publisherpete | Harold L. Thompson; HFOco Network Services | thompsonharold@hotmail.com |
| eBay Seller glassnmore15 | Noah Canan; Noha Hasan; AKA Imports; Elkhart Smoke Shop | nkanan@iusb.edu |
| eBay Seller azoz2016h | Azizeh Hasan | azozhasoon@gmail.com |
| eBay Seller elksmokes | Mike Kanan | mikecanan2016@gmail.com |
| eBay Seller maor_amar | M.R.A. Group Ltd.; Jose Adrian | meiran.trade@gmail.com |
| Amazon Seller Orksel Inc. | n/a | n/a |
| Amazon Seller kennyskorner | n/a | n/a |
| Amazon Seller TooHotGlass | n/a | n/a |
| Amazon Seller Express deals corp. | Jose Adrian | n/a |
| Amazon Seller ChopShopDeals | n/a | n/a |

28

| Amazon Seller RazoDazzle | n/a | n/a |
|---|---|---|
| Bonanza Seller akwholesaler | Ahsan Khowja | ahsankhowja@yahoo.com |
| Bonanza Seller lenkoseller | Delroy Johnson | flenkoseller@gmail.com |
| Rakuten Seller Granpawenterprise | n/a | n/a |