# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

NORTH ATLANTIC OPERATING COMPANY INC.; NATIONAL TOBACCO COMPANY, L.P.,

Plaintiffs,

v.

WALTER C. SCOTT, et al.,

Defendants.

Case No. 16-12076
Hon. Terrence G. Berg

---

**OPINION AND ORDER DENYING MOTION TO SET ASIDE ENTRY OF DEFAULT (Dkt. 115, 116); GRANTING MOTION FOR DEFAULT JUDGMENT (Dkt. 104); GRANTING PLAINTIFFS' ATTORNEYS' REQUEST FOR FEES AND COSTS (Dkt. 112, 113)**

---

Plaintiffs, the exclusive manufacturers, marketers, and distributors of ZIG-ZAG® cigarette paper products, brought this trademark and copyright infringement action against online sellers of counterfeit versions of their product. Dkt. 1. Some of the online sellers responded to the action and entered into settlements with Plaintiffs that included stipulated permanent injunctions. Dkt. 55 (Nguyen), Dkt. 56 and Dkt. 58 (RazoDazzle), Dkt. 59 (Chopshopdeals), Dkt. 62 and 70 (Amar), Dkt. 68 and 71 (Abualkhair), Dkt. 81 and 82 (Hudleston), Dkt. 98 and 99 (Davoodi-Masihi). One

1

additional Defendant was voluntarily dismissed without prejudice by Plaintiffs. Dkt. 100 (Biswa).

Plaintiffs North Atlantic Operating Company, Inc.'s and National Tobacco Company, L.P.'s ("North Atlantic") filed a Motion for Default Judgment and Related Relief (Dkt. 104), pursuant to Federal Rules of Civil Procedure 55 and 65 and Local Rule 55.2, seeking entry of default judgment against the following groups of non-responding defendants:

(1) Walter C. Scott,[1] and eBay seller respect843;

(2) Mohammed Akbar, eBay seller zigzag_wholesale, eBay seller atlantic_market, and eBay seller smwholesale360;

(3) Harold L. Thompson, HFOco Network Services, and eBay seller publisherpete;

(4) James Cleary, and eBay seller iluvmoney1232012;

(5) Burtin/Burton Parker, River City Depot, and eBay seller cheepstuff65;

(6) Nicless Cigarette Filters, and eBay seller usbigdiscountwarehouse;

(7) Amazon seller kennyskorner;

[1] The Court construed a letter received from defendant Walter C. Scott as a Motion to Set Aside Default Judgment, to which Plaintiff's responded on Sept. 5, 2018. This letter was Mr. Scott's first attempt to contact the Court or Plaintiff in regard to this case. Mr. Scott made no prior attempt to meet and confer with Plaintiff and makes no challenge to his service of the numerous documents in this case. Having read and considered Mr. Scott's letter and Plaintiff's Response, the Court DENIES his Motion to Set Aside Default Judgment.

(8) Jose Adrian, Amazon seller Express Deals Corp., and Fast World Closeout;

(9) Rakuten Seller Granpawenterprise.

North Atlantic also seeks to convert all preliminary injunctions entered against these non-responding defendants into permanent injunctions, pursuant to Fed. R. Civ. P. 65.

Having reviewed the papers and proceedings in support of the Motion, including North Atlantic Operating Company's Brief, Declaration of John Hood (with Exhibits), Dkt. 106; Declarations of Lyndsay S. Ott (with Exhibit), Dkts. 105 and 112; and Declaration of Marcella Ballard (with Exhibits), Dkt. 113; and this Court being fully satisfied that Defendants were effectively served with copies of the Complaint and other case-initiating documents, and all other papers and proceedings in this action; and good cause being shown; the Court hereby GRANTS Plaintiff's Motion for Default Judgment. The Court awards statutory damages in the amount of $200,000, jointly and severally per group of non-responding defendants for total statutory damages award of $1,800,000 per the Lanham Act, as well as reasonable attorneys' fees and costs as outlined below in this Order. The Court hereby converts all preliminary injunctions relating to the defaulting defendants to permanent injunctions.

**Attorneys' Fees and Costs**

Local counsel from Warner Norcross & Judd LLP and outside counsel from Venable LLP have submitted declarations in support of their firms' requested fees. Dkts. 112, 113. For the reasons discussed below the Court will approve $19,219.77 in costs and fees for Warner Norcross & Judd, LLP $80,972.14 in costs and fees for Venable LLP.

## I.   Analysis

The first step in determining attorneys' fees is "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–37 (1983) (noting that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate")). The party requesting the fees has the burden of establishing that they are entitled to the requested amount. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013). "The key requirement for an award of attorney's fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Inwalle v.*

*Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). The trial judge must "question the time, expertise, and professional work of [the] lawyer" applying for fees. *Earl v. Beaulieu*, 620 F.2d 101, 103 (5th Cir. 1980). And, in calculating the appropriate award, "the district court is required to give a clear explanation," as to its reasoning. *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004).

To determine a reasonable hourly rate for attorneys or firms located out-of-state, "courts use as a guideline the prevailing market rate, which is defined as the rate that lawyers of comparable skill and experience can reasonably expect to command **within the venue of the court of record**." *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)(emphasis added)(quotation marks omitted)). As such, the Court uses a report produced regularly by the State Bar of Michigan called the "2017 Economics of Law Practice, Attorney Income and Billing Rate Summary Report," available at https://www.michbar.org/file/pmrc/articles/0000153.pdf (hereinafter "2017 Report").

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Thus, trial courts "may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time," *id*., and need only provide "a concise

but clear explanation" of their reason for reaching a certain fee award amount. *Hensley*, 461 U.S. at 437.

The court will address the reasonableness of the hour calculations and fee requests for each of the two submitting firms in turn.

### a. Warner Norcross & Judd LLP Fee Request

Lyndsay Ott submitted the declaration in support of attorneys' fees for the lawyers at Warner Norcross & Judd LLP ("WNJ") who served as local counsel. Dkt. 112. Ms. Ott is a senior associate at WNJ, and the primary attorney responsible for this matter. *Id*. at PageID.2115–2116. Ms. Ott was assisted by Partner David Eberhard, Partner Matthew K. Casey, Staff Attorney Adam Cefai, (former) Associate Jane Kogan, and Associate Emily Rucker, Associate. *Id*. at 2118–2119. These attorneys provided support in all aspects of the case, from "high-level strategic counseling" to "assembly and review of the original pleadings[.]" *Id*.

All told, Ms. Ott provided documentation that litigation activities undertaken by WNJ—including strategy, research, drafting, service, filing, and compliance with local rules—comes to a total of 124.80 combined hours of attorney and paralegal time. Dkt. 112 at PageID.2121–2122. WNJ requests $20,316.92 in costs and fees: $19,087.94 for attorney and paralegal time and $1,228.98 for costs. *Id*.

### i.  Number of hours

WNJ has requested fees relating to a total of 124.80 attorney hours. Dkt. 112 at PageID.2122. The Court has reviewed the time-sheets submitted with the Ott declaration, which include a concise explanation for the tasks completed during all the billed time. Dkt. 112-4, 112-5. Ms. Ott states in her declaration that "tasks for which North Atlantic seeks fees/costs" are "in green highlighting," but the entire timesheet is in green highlighting. Dkt. 112 at PageID.2121. Additionally, Ms. Ott's declaration appears to be missing page 7, which apparently had paragraphs 22 and 23 on it. *See* Dkt. 112 at PageID. 2120–21. Notwithstanding these deficiencies, based on its review the Court concludes that 124.80 attorney hours over the course of this case—which began in June 2016—between several attorneys is a reasonable number of hours for local counsel to have expended on this litigation.

### ii.  Billing rate

Ms. Ott included the following table showing the hourly rates charged by each attorney involved in this case:

| ATTORNEY | Hourly Rate(s) from 2015–2018 |
| --- | --- |
| Lyndsay S. Ott | $440–$720 |
| David Eberhard | $440–$720 |
| Matthew Casey | $440–$720 |

| Jane Kogan | $320–$340 |
| Adam Cefai | $195–$235 |
| Emily Rucker | $245–$305 |

Dkt. 112 at PageID.2119. These rates reflect the rates that are included in the spreadsheets of costs, as well. However, there are several inconsistencies within the spreadsheets. For instance, several items on WNJ's fees sheet have the same task description and attorney, but different hourly rates. "Eberhard, D.C." completed task "Pleadings" on 6/8/2016 for 0.6 hours, at a rate of $440.00 per hour. Dkt. 112-4, PageID.2139. Then, on 6/9/2016, Eberhard, D.C. completed task "Pleadings" for 1.8 hours at a rate of $535.00 per hour. *Id*. Similarly, Ms. Ott charged $535.00 per hour for "Pleadings" on 6/8/2016, but $440.00 for the same task on 6/9/2016, and then $720.00 for the same task on 6/13/2016. *Id.* Also confusing on this sheet are entries in which the amount of time multiplied by the billing rate produces a number other than the one present in the sheet. On June 29, 2017, Ms. Ott billed 0.4 hours at $510.00 per hour—again for "Pleadings"—which should result in a billed amount of about $204.00, but instead lists the total cost of this task as $120.00. *Id.* at PageID.2143. This total billed amount reflects an hourly rate of $300.00 per hour, not $510.00.

Further confusing the issue, in the included chart that lists billed hours and total fees for all defaulting defendants, Ms. Ott requests $11.892.60 for her work. Dkt. 112 at PageID.2121. This number appears to be a miscalculation, when the rest of the chart is taken in to consideration. In the other rows of this same chart, it appears that Ms. Ott takes an attorney's billed hours amount, multiplies it by their applicable hourly rates, then divides that total by twenty-one (the number of original defendants), and finally multiplies by nine (the number of defaulting defendants). For instance, David Eberhard's 9.70 hours worked, multiplied by his apparent average hourly rate of $457.44 per hour gives a "Total Fees For Relevant Proceedings" of $4,437.12. *Id.* That number divided by twenty-one gives the "Prorated Fees Per Defaulting Defendant" amount of $211.29. *Id.* That number multiplied by nine gives the "Total Fees for All Defaulting Defendants" of $1,901.62. *Id.*

Ms. Ott lists her total number of hours worked as 89.30, and her Total Fees For Relevant Proceedings as $25,189.39, meaning her average rate is roughly $282 per hour. *Id.* When the Court takes her Total Fees amount of $25,189.39 and divides by twenty-one then multiplies by nine, it is left with a $10,795.45 Total Fee for All Defaulting Defendants, not the $11,892.60 she claims. Absent any explanation from Ms. Ott, the Court presumes she simply miscalculated this number.

Ms. Ott asserts in her declaration that "[t]he hourly rates that WNJ attorneys charge fall within the range of hourly rates that other Michigan lawyers charge, according to the State Bar of Michigan's 2017 Economics of Law Practice Attorney Income and Billing Rate Summary, attached as <u>Exhibit B</u>." Dkt. 112 at PageID. 2120. However, attached as Exhibit B to Ms. Ott's filing is the "AIPLA 2017 Report of the Economic Survey," which is a report prepared by the American Intellectual Property Law Association that catalogs the range of fees paid to attorney in intellectual property litigation. Dkt. 112-4. The Court does consider the reasonableness of requested hourly fees based on the 2017 report by the Michigan State Bar Association referenced—but not attached—by Ms. Ott.[2] Regardless, neither of these reports supports the conclusion that the hourly rates charged by WNJ attorneys "fall within the range of hourly rates that other Michigan lawyers charge," as Ms. Ott attested.

As Ms. Ott herself notes later in her own declaration, the billing rates for intellectual property lawyers in Michigan is $318 per hour at the twenty-fifth percentile to $398 per hour at the seventy-fifth percentile to $565 per hour at the ninety-fifth percentile. 2017 Report at 6; Dkt 112 at PageID.2120. Yet a large share of the hours

---

[2] *See* State Bar of Michigan, 2017 Economics of Law Practice, Attorney Income and Billing Rate Summary Report, https://www.mich-bar.org/file/pmrc/articles/0000153.pdf (hereinafter 2017 Report).

claimed by WNJ are billed at $720 per hour. Dkt. 112-4. Ms. Ott offers no explanation for her assertion that $720 per hour—roughly 125% higher than the relevant ninety-fifth percentile reimbursement rate—is somehow within the range normally charged by Michigan attorneys.

The 2017 Report calculates hourly ranges based on a variety of factors, such as title (Sr. Counsel versus Partner), years in practice, county of practice, and area of law, among other things. Having reviewed all applicable categories and ranges in the 2017 Report, the Court will reimburse Ms. Ott, Mr. Eberhard, and Ms. Casey at rates consistent with the 2017 Report rather than the rates proffered, because they are reasonable and based on the hourly rates for similarly-situated attorneys practicing in Michigan. The Court next addresses the rate at which each attorney will be reimbursed.

### A. Lyndsay Ott

Ms. Ott is a senior counsel at WNJ, and the primary attorney responsible for this client and matter at WNJ. Dkt. 112, PageID.2116. Ms. Ott has been a lawyer since 2009, giving her 9 years of practice experience, at a maximum. She practices in Macomb County, and this case involved intellectual property. These factors yield a range of $195 for the twenty-fifth percentile reimbursement for attorneys with 6–10 years' experience on the low end

to $565 for the ninety-fifth percentile reimbursement for intellectual property attorneys at the high end. The highest seventy-fifth percentile that applies to Ms. Ott is also the one that applies to intellectual property attorneys, yielding a reimbursement of $398.

As noted above, Ms. Ott claims her billing rates are above the seventy-fifth percentile for every category that applies to her in the 2017 Report.[3] However, in the chart listing the total fees that she is requesting, her effective hourly rate is roughly $282. *See* Dkt. 112 at PageID.2121–22. The Court finds that an hourly billing rate of $282—which puts her in between the twenty-fifth and seventy-fifth percentiles for all relevant categories in the 2017 Report—is exceedingly fair. The Court will award Ms. Ott $10,795.45 in attorneys' fees for her work on this litigation pertaining to defaulted defendants.

### B. David Eberhard and Matthew Casey

Ms. Ott's declaration also assigns the hourly rates range of $440–$720 for the time billed on this case by Partners David Eberhard and Matthew Casey. Dkt 112 at PageID.2119. The Court looked at

---

[3] The seventy-fifth percentile reimbursement for attorneys with 6–10 years in practice is $283; for Senior Associate it is $315, while for "Of Counsel" it is $400 (the 2017 Report does not have a "Senior Counsel" title option); for Macomb County attorneys it is $300.

the same 2017 Report discussed above to determine the reasonableness of the fee request as it pertains to Messrs. Eberhard and Casey.

The Report lists three different partner categories: Managing Partner, Equity Partner/Shareholder, and Non-Equity Partner. 2017 Report at 4. According to the 2017 Report the seventy-fifth percentile billing rate for partners in Michigan ranged from $350 to $395, depending on which type of partner. *Id.* The ninety-fifth percentile for partners ranged from $467 to $567, again depending on which type of partner. *Id.* The Court is unaware of whether Messrs. Eberhard and Casey are one type of partner versus another. For attorneys with 16–25 years of experience (Eberhard) the mean hourly billing rate was $279; the seventy-fifth percentile was $325; and the ninety-fifth percentile was $475. *Id.* For attorneys with 26–30 years of experience (Casey) the mean hourly billing rate was $278; the seventy-fifth percentile was $328; and the ninety-fifth percentile was $530. *Id.*

The Court finds therefore that an hourly billing rate of $450—which puts them both comfortably above the seventy-fifth percentile for intellectual property-practicing partners with their titles and experience—is reasonable for both Messrs. Eberhard and Ca-

sey. Using the same formula as before, the Court awards Mr. Eberhard $1,872.00 in attorneys' fees, and Mr. Casey $4,666.50 in attorneys' fees for their work on the case. Dkt. 112 at PageID.2121.

### C. Adam Cefai, Jane Kogan, Emily Rucker

Having examined every attorney named by Ms. Ott as being involved in this litigation across every known factor, and also having examined the hourly rates proffered by Ms. Ott in her declaration, the Court is satisfied with the rates and amounts attached to Adam Cefai, Jane Kogan, and Emily Rucker as being both reasonable numbers of hours and reasonable hourly rates, based on the 2017 Report. The Court finds therefore that the hourly billing rates for Jane Kogan ($320–340), Adam Cefai ($195–235), and Emily Rucker ($245–$305) are reasonable based on the 2017 Report, and that the hours attributed to each of them are also reasonable considering their comparatively minor roles in this litigation. The Court awards a total of $41.09 for Jane Kogan, $25.38 for Adam Cefai, and $113.57 for Emily Rucker.

The Court awards Warner Norcross & Judd LLP fees in the amount of $17,990.79, and costs in the amount of $1,228.98, for a total of $19,219.77.

### b. Venable LLP Fee Request

Marcella Ballard submitted the declaration in support of attorneys' fees for the lawyers at Venable LLP ("Venable"). Dkt. 113. Ms.

14

Ballard is a partner at Venable, and the billing attorney responsible for these clients at Venable. *Id.* at PageID.2115–2116. Ms. Ballard oversaw all of Venable's work, and was assisted by Victoria Danta (senior associate – IP litigation), Melissa McLaughlin (senior associate – commercial litigation), Samantha Rothaus (former mid-level associate – IP litigation), Cindy Zuniga (junior associate – commercial litigation), Maria Sinatra (junior associate – IP litigation), and Matthew Renick (junior associate – IP litigation). Dkt. 113 at PageID.2149. Two paralegals—Jennifer Spinning and Delia Green—also supported the attorneys throughout the proceedings. *Id.* Venable calculates a total of 486.20 combined hours of attorney and paralegal time. Dkt. 113 at PageID.2155–56.

### i. Number of hours

Venable has requested fees for 486.20 attorney hours. Dkt. 113 at PageID.2155–56. The Court has reviewed the timesheets submitted with the Ballard declaration, which include a clear, concise explanation for the tasks completed during all the billed time. Dkt. 112-4, 112-5. Based on this review the Court concludes that 486.20 hours over the course of this case—which began in June 2016—between several attorneys is a reasonable number of hours for counsel to have expended on this litigation.

## ii. **Billing rates**

In support of Venable's fee request, Ms. Ballard included the following chart in her declaration:

| Attorney | Billed Hours | Total Fees For Relevant Proceedings | Prorated Fees Per Defaulting Defendant | Total Fees for All Defaulting Defendants |
|---|---|---|---|---|
| Marcella Ballard | 74.90 | $54,104.00 | $2,747.37 | $24,726.29 |
| Victoria R. Danta | 149.90 | $78,960.00 | $4,877.99 | $43,901.93 |
| Melissa C. McLaughlin | 182.60 | $97,691.00 | $4,651.95 | $41,867.57 |
| Samantha G. Rothaus | 25.50 | $11,220.00 | $534.29 | $4,808.57 |
| Cindy E. Zuniga | 5.90 | $1,858.50 | $88.50 | $553.50 |
| Maria R. Sinatra | 25.20 | $9,182.00 | $978.75 | $8,808.71 |
| Matthew S. Renick | 2.20 | $737.00 | $35.10 | $315.86 |
| Delia Green | 4.20 | $1,362.00 | $73.37 | $660.29 |
| Jennifer M. Spinning | 15.80 | $4,849.00 | $230.90 | $2,078.14 |
| **TOTAL:** | **486.20** | **$259,963.50** | **$14,218.21** | **$127,963.86** |

Upon review of this chart, it becomes clear that, as with Ms. Ott's declaration for WNJ's fees, Ms. Ballard has either made some miscalculations or failed to inform the Court of alterations to her fees. For example, while four of the persons' "Total Fees for Relevant Proceedings" are divided by twenty-one and then multiplied by nine to reach their "Total Fees for All Defaulting Defendants,"[4] the other five persons' do not abide by this formula. Ms. Ballard's Total Fees

---

[4] The numbers for Melissa McLaughlin, Samantha Rothaus, Matthew Renick, and Jennifer Spinning comport with the formula Ms. Ballard laid out earlier in the Ballard declaration.

for Relevant Proceedings should yield a Total Fees for All Defaulting Defendants of $23,187.43, not $24,726.29.

As noted above, the Court utilizes the 2017 Report to consider whether rates are reasonable.

**A. Marcella Ballard**

Ms. Ballard has assigned the hourly rate of "$720–755" to her time spent on this case, which she indicates are her normal and usual hourly rates. Dkt. 113 at PageID.2152.

Ms. Ballard is a partner at Venable and had been practicing for over 30 years. Dkt. 113-2 at PageID.2161–62. The mean hourly billing rate for non-equity partners in 2017 was $319; the seventy-fifth percentile was $395; and the ninety-fifth percentile was $567. 2017 Report at 4. The rates for equity partners were similar: mean of $329 per hour, seventy-fifth percentile of $400 per hour, and ninety-fifth percentile of $552 per hour. *Id.*

The 2017 report includes guidance on the fees paid to out-of-state attorneys serving as counsel for matters here in Michigan. 2017 Report at 5. According to the Report, the mean hourly billing rate for out-of-state attorneys was $320; the seventy-fifth percentile was $383; and the ninety-fifth percentile was $600. *Id.*

Based on these data points the Court has determined that $575 is a reasonable hourly rate for Ms. Ballard's work on this matter given that it places her just under the ninety-fifth percentile for out-

of-state attorneys practicing in Michigan and above the ninety-fifth percentile for equity and non-equity partners practicing in Michigan.

## B. Victoria Danta, Melissa McLaughlin, Samantha Rothaus

Turning to the billing rates for the associates on the case, the Court determines that an hourly rate of $350 is reasonable for Ms. Danta who is a sixth-year senior associate. Dkt. 113 at PageID.2150. This rate puts her in the ninety-fifth percentile of associates practicing in Michigan; above the ninety-fifth percentile for third through fifth-year associates; just below the ninety-fifth percentile of sixth through tenth-year associates practicing in Michigan; and between the mean and seventy-fifth percentile for all out-of-state attorneys practicing in Michigan. 2017 Report at 4–5.

The Court determines that an hourly rate of $400 is reasonable for Ms. McLaughlin, who has eight years of practice experience. Dkt. 113-2 at PageID.2167–68. This rate puts her above the ninety-fifth percentile for sixth through tenth-year associates practicing in Michigan; and between the seventy-fifth and ninety-fifth percentiles for all out-of-state attorneys practicing in Michigan. 2017 Report at 4–5. This rate also reflects her advanced experience compared to Ms. Danta, who was reimbursed within the same range.

The Court determines that $325 is reasonable for Ms. Rothaus who was a second through fourth-year associate during the course of her representation in this case. Dkt. 278 at Pg ID 2456-57. This rate puts her just under the ninety-fifth percentile for all associates practicing in Michigan; at the ninety-fifth percentile for third through fifth year associates practicing in Michigan; and just above the mean for all out-of-state attorneys practicing in Michigan. 2017 Report at 4–5.

### C. Cindy Zuniga, Maria Sinatra, Matthew Renick

Finally, the Court has determined that an hourly rate of $250 is reasonable for Ms. Zuniga, Ms. Sinatra, and Mr. Renick who were all first through third-year associates during their work on this case. Dkt. 113-2 at PageID.2169–72. This rate puts them between the mean and seventy-fifth percentile for all associates practicing in Michigan; at the seventy-fifth percentile for all first through fifth year associates practicing in Michigan; and between the twenty-fifth percentile and mean of all out-of-state attorneys practicing in Michigan. 2017 Report at 4–5.

### D. Delia Green, Jennifer Spinning

The Court will utilize the paralegal rate approved in a recent awards order by another Judge from this court involving many of the same attorneys, and one of the same paralegals. *N. Atl. Operating Co., Inc. v. eBay Seller Dealz_for_You*, No. 17-10964, 2018 WL

3031092, at *10, slip op. (E.D. Mich. June 19, 2018) (Awarding paralegal Green at a rate of $167.50 per hour). Accordingly, the Court will award paralegal fees at a rate of $187.50 per hour.

Ms. Ballard provided a chart of all attorney and paralegal hours, adjusted to prorate for defaulted defendants. However, the Court found that chart contained errors or miscalculations. Accordingly, the Court created the following corrected chart to denote the numbers for all parties, and the apparent effective average hourly rate charged by each listed person:

| Attorney | Billed Hours | Total Fees for Relevant Proceedings | Effective Hourly Billing Rate (Total Fees/Billed Hours) | Prorated Fees Per Defendant (Total Fees/21) | Total Fees for All Defaulting Defendants (Prorated Fees x 9) |
|---|---|---|---|---|---|
| Marcella Ballard | 74.9 | $54,104.00 | $722.35 | $2,576.38 | $23,187.43 |
| Victoria Danta | 149.9 | $78,960.00 | $526.75 | $3,760.00 | $33,840.00 |
| Melissa McLaughlin | 182.6 | $97,691.00 | $535.00 | $4,651.95 | $41,867.57 |
| Samantha Rothaus | 25.5 | $11,220.00 | $440.00 | $534.29 | $4,808.57 |
| Cindy Zuniga | 5.9 | $1,858.50 | $315.00 | $88.50 | $796.50 |
| Maria Sinatra | 25.2 | $9,182.00 | $364.37 | $437.24 | $3,935.14 |
| Matthew Renick | 2.2 | $737.00 | $335.00 | $35.10 | $315.86 |
| Delia Green | 4.2 | $1,362.00 | $324.29 | $64.86 | $583.71 |
| Jennifer Spinning | 15.8 | $4,849.00 | $306.90 | $230.90 | $2,078.14 |
| TOTALS | 486.20 | $259,963.50 | | | $111,412.93 |

Using the same formula as before (dividing by twenty-one, then multiplying by nine), but implanting the reasonable hourly rates approved by this Court in this Order yields the following chart:

| Attorney/Professional | Billed Hours | Approved reasonable hourly billing rate | Total Fees for Relevant Proceedings | Prorated Fees Per Defendant (Total Fees/21) | Total Fees for All Defaulting Defendants (Prorated Fees x 9) |
|---|---|---|---|---|---|
| Marcella Ballard | 74.9 | $575 | $43,067.50 | $2,050.83 | $18,457.50 |
| Victoria Danta | 149.9 | $350 | $52,465.00 | $2,498.33 | $22,485.00 |
| Melissa McLaughlin | 182.6 | $400 | $73,040.00 | $3,478.10 | $31,302.86 |
| Samantha Rothaus | 25.5 | $325 | $8,287.50 | $394.64 | $3,551.79 |
| Cindy Zuniga | 5.9 | $250 | $1,475.00 | $70.24 | $632.14 |
| Maria Sinatra | 25.2 | $250 | $6,300.00 | $300.00 | $2,700.00 |
| Matthew Renick | 2.2 | $250 | $550.00 | $26.19 | $235.71 |
| Delia Green | 4.2 | $187.50 | $787.50 | $37.50 | $337.50 |
| Jennifer Spinning | 15.8 | $187.50 | $1,962.50 | $141.07 | $1,269.64 |
| TOTALS | 486.20 | | $188,935.00 | | $80,972.14 |

Accordingly, the Court will award Ms. Ballard $18,457.50 in attorneys' fees for her work on this case. See Dkt. 278 at Pg ID 2457. Likewise, the Court awards Victoria Danta $22,485.00; Melissa McLaughlin $31,302.86; Samantha Rothaus $3,551.79; Cindy Zuniga $632.14; Maria Sinatra $2,700.00; Matthew Renick $235.71; Delia Green $337.50; Jennifer Spinning $1,269.64. In total, the Courts awards Venable LLP $80,972.14 in attorney and paralegal fees.

### iii.    Additional costs

The Venable firm has also requested $5,993.78 in costs disbursed to Plaintiff, and $14,077.08 in investigative fees. Dkt. 113 at PageID.2157. Venable has included a chart explaining these costs in Ms. Ballard's declaration, a sheet outlining specific costs, and an

accounting of the investigative costs. Dkt. 113 at PageID.2156–57; Dkt. 113-5; Dkt. 113-6.

The Court has reviewed the costs listed which are primarily composed of travel and lodging as well as attempts to serve the defendants through commercial delivery services; several of whom resided in other countries. These are thus all reasonably incurred costs given the nature of this litigation and the Court will therefore award the Venable firm the $5,993.78 in costs.

Regarding the investigative fees and costs, the Venable firm has submitted invoices from LSS Consulting, Inc., which conducted investigations of the counterfeit sales on eBay and monitored them for several months determine the identities of the sellers. Dkt. 113-6. As part of this work it appears LSS consulting also prepared evidence and reports that were provided to Plaintiffs' counsel. *Id.* Those invoices total $32,846.53. After employing the same formulas as above to account for already-dismissed defendants, or defendants otherwise irrelevant to this Order, the Court will thus award the Venable firm $14,077.08 in investigative costs for this case.

## I.   Conclusion

For the foregoing reasons the Court will award the Warner Norcross & Judd LLP firm a total of $19,219.77 in costs and fees, and the Venable LLP firm a total of $101,043.00 in costs and fees.

IT IS HEREBY ORDERED that:

A.    Defendant Walter C. Scott's Motion to Set Aside Default Judgment is **DENIED**;

B.    North Atlantic Operating Company's Motion for Default Judgment and Related Relief is **GRANTED**;

C.    Default Judgment, pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2, is hereby entered against the following groups of "Non-Responding Defendants" for each and all of the Counts alleged in North Atlantic's Complaint in the amount of **$200,000**, jointly and severally per group of Non-Responding Defendants ((a) – (i), below), for a total statutory damages award of **$1,800,000** under the Lanham Act (15 U.S.C. § 1117(c)) against the following "Non-Responding Defendants":

    a) Defendants Walter C. Scott and eBay Seller respect843;

    b) Defendants Mohammad Akbar, eBay Seller zig-zag_wholesale, eBay Seller atlantic_market, and eBay Seller smwholesale360;

    c) Defendants Harold L. Thompson, HFOco Network Services, and eBay Seller publisherpete;

    d) Defendants James Cleary, and eBay Seller iluvmoney1232012;

    e) Defendants Burtin/Burton Parker, River City Depot, and eBay Seller cheepstuff65;

    f) Defendants Nicless Cigarette Filters, and eBay Seller usbigdiscountwarehouse;

    g) Defendants Amazon Seller kennyskorner;

    h) Defendants Jose Adrian, Amazon Seller Express Deals Corp., and Fast World Closeout; and,

i) Defendant Rakuten Seller Granpawenterprise;

D.     In addition to the above, North Atlantic Operating Company is also awarded its reasonable attorneys' fees, costs, and investigative fees in the above-listed amounts, pursuant to the Lanham Act (15 U.S.C. § 1117) and Copyright Act (17 U.S.C. § 505):

E.     The Non-Responding Defendants, and their officers, agents, servants, employees, and attorneys, and all those in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, are forever enjoined and restrained from, directly or indirectly, anywhere in the world:

   a) Importing, shipping, manufacturing, delivering, advertising, promoting, making, purchasing, offering for sale, selling, distributing, or otherwise disposing of, in any manner, any counterfeit or infringing ZIG-ZAG® brand cigarette paper products, including but not limited to ZIG-ZAG® 1 ¼ Size French Orange cigarette paper products ("ZIG-ZAG® Orange"), or any cigarette paper products bearing:

       i. Infringing or counterfeit versions of the ZIG-ZAG® Trademarks,[5] the NAOC® Trademarks,[6]

---

[5] Defined as the marks of U.S. Registration Nos. 610,530 (ZIG-ZAG (stylized)); 1,127,946 (ZIG-ZAG (Word Mark)); 2,169,540 (Smoking Man Design (Circle Border)); 2,169,549 (Smoking Man Design (No Border)).

[6] Defined as the marks of U.S. Registration Nos. 2,664,694 and 2,664,695 (NORTH ATLANTIC OPERATING COMPANY INC. and Gear Design); and

the NAOC© Copyright,[7] and/or the ZIG-ZAG®
Orange Trade Dress,[8] which appear alone or in
combination on all cases, cartons, and booklets
of ZIG-ZAG® Orange cigarette paper products
distributed by North Atlantic in the United
States; or

ii. The false statement that such products are
"Distributed by North Atlantic Operating Com-
pany, Inc.", or otherwise under North Atlantic's
supervision or control, when they are not;

b. Importing, shipping, manufacturing, distributing,
delivering, advertising, promoting, making, purchas-
ing, offering for sale, selling, passing off, distributing,
or otherwise disposing of, in any manner, any pur-
ported North Atlantic products that are not actually

---

2,610,473 and 2,635,446 (NORTH ATLANTIC OPERATING COMPANY
(Word Mark)).

[7] Defined as the work of the federal copyright registration for the visual mate-
rial/computer graphic titled "North Atlantic Operating Company, Inc." (VAu
464-855).

[8] Defined as the distinctive design elements comprising the overall look and
feel of ZIG-ZAG® Orange packaging (booklets and cartons), including at least
the following: (1) ZIG-ZAG® and NAOC® Trademarks, (2) NAOC© Copyright,
(3) gold-fill lettering and design elements, (4) French phrases such as "Qualite
Superieure" and "Braunstein Freres France," and (5) the express statements
that the products are "Made in France" or "Imported French", or "Distributed
by North Atlantic Operating Company, Inc."

produced, imported, or distributed under North Atlantic's supervision or control, or approved for sale by North Atlantic in the United States in connection with the ZIG-ZAG® or NAOC® Trademarks, the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress, or inducing or enabling others to commit any of the aforesaid acts;

c.  Committing any acts calculated to cause purchasers to believe that counterfeit or infringing ZIG-ZAG® cigarette paper products, including ZIG-ZAG® Orange, originate with North Atlantic when they do not;

d.  In any way infringing or damaging the ZIG-ZAG® or NAOC® Trademarks, the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress;

e.  Forming or causing to be formed any corporation or other entity that engages in any of the above-described acts ((a) – (e)); and

f.  Attempting, causing, or assisting in any of the above-described acts ((a) – (f)), including but not limited to enabling others in the above-described acts or passing on information to allow them to do so.

**SO ORDERED.**

| Dated:  September 28, 2018 | s/Terrence G. Berg |
|---|---|
| | TERRENCE G. BERG |
| | UNITED STATES DISTRICT JUDGE |

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on September 28, 2018.

s/A. Chubb
Case Manager