UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| **NORTH ATLANTIC OPERATING COMPANY INC.; NATIONAL TOBACCO COMPANY, L.P.**, <br><br> Plaintiffs, <br><br> vs. <br><br> **WALTER C. SCOTT, et al.**, <br><br> Defendants. | 4:16-CV-12076-TGB <br><br><br> **OPINION AND ORDER GRANTING MOTION FOR DEFAULT JUDGMENT (ECF NO. 149) AND GRANTING PLAINTIFFS' ATTORNEYS' REQUEST FOR FEES AND COSTS (ECF NOS. 156, 157)** |

Plaintiffs, the exclusive manufacturers, marketers, and distributors of ZIG-ZAG® cigarette paper products, brought this trademark and copyright infringement action against online sellers of counterfeit versions of their products. ECF No. 1. Some of the online sellers responded to the action and entered into settlements with Plaintiffs that included stipulated permanent injunctions. Others, the Plaintiff moved for default judgment because they failed to respond, which this Court granted. ECF No. 118.

1

# I. Default Judgment

Plaintiffs North Atlantic Operating Company, Inc. and National Tobacco Company, L.P ("North Atlantic") have now filed a Motion for Default Judgment and Related Relief (ECF No. 149), pursuant to Federal Rules of Civil Procedure 55 and 65 and Local Rule 55.2, seeking entry of default against the following non-responding Defendants:

(1) Delroy Johnson;

(2) eBay Seller Lenkoseller; and

(3) Bonanza Seller Lenkoseller.

("the Johnson Defendants"). Plaintiffs also seek to convert all preliminary injunctions entered against these non-responding defendants into permanent injunctions, pursuant to Fed. R. Civ. P. 65.

Having reviewed the papers and proceedings in support of the Motion, including North Atlantic Operating Company's Brief, Declaration of Lyndsay S. Ott (with Exhibit) (ECF No. 150), and Declaration of John Hood (ECF No. 151), and this Court being fully satisfied that Defendants were effectively served with copies of the Complaint and other case-initiating documents, and all other papers and proceedings in this action; and good cause being shown; the Court hereby **GRANTS** Plaintiff's Motion for Default Judgment. The Court awards statutory damages in the amount of $200,000, jointly and severally under the Lanham Act, as well as reasonable attorneys' fees and costs, as outlined below in this Order. The Court hereby converts all preliminary

injunctions relating to the defaulting Defendants to permanent injunctions.

## II. Attorneys' Fees and Costs

Local counsel from Warner Norcross & Judd LLP and outside counsel from Venable LLP have submitted declarations in support of their firms' requested fees. ECF Nos. 156, 157. For the reasons discussed below, the Court will approve $3,065.58 in costs and fees for Warner Norcross & Judd, LLP. The Court will approve $11,440.41 in costs and fees for Venable LLP.

**A.   Analysis**

The first step in determining attorneys' fees is "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983) (noting that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate")). The party requesting the fees has the burden of establishing that they are entitled to the requested amount. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013). "The key requirement for an award of attorney's fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and

reasonably expended in the prosecution of the litigation." *Inwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). The trial judge must "question the time, expertise, and professional work of [the] lawyer" applying for fees. *Earl v. Beaulieu*, 620 F.2d 101, 103 (5th Cir. 1980). And, in calculating the appropriate award, "the district court is required to give a clear explanation," as to its reasoning. *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004).

To determine a reasonable hourly rate for attorneys for firms located out-of-state, "courts use as a guideline the prevailing market rate, which is defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (emphasis added) (quotation marks omitted)). As such, the Court uses a report produced regularly by the State Bar of Michigan called the "2017 Economics of Law Practice, Attorney Income and Billing Rate Summary Report," available at https://www.michbar.org/file/pmrc/articles/0000153.pdf.

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Thus, trial courts "may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's

time," *id.*, and need only provide "a concise but clear explanation" of their reason for reaching a certain fee award amount. *Hensley*, 461 U.S. at 437.

On September 28, 2018, this Court issued a comprehensive order on Plaintiffs' prior request for attorney fees and costs, following the default of nine defaulted Defendants. ECF No. 118. Except where stated otherwise, the Court adopts the findings made therein. As an initial matter, the Court notes that in Plaintiff's prior motion for default judgment, Plaintiffs stated they were moving for an order granting default against nine "groups" of defendants. ECF No. 104, PageID.1824. Plaintiff, and the Court, proceeded with the understanding that the action contained 21 "groups" of Defendants, and the court would evenly divide Plaintiffs' attorneys' fees and costs amongst the 21 groups. In the currently pending motion for default judgment (ECF No. 149) and declarations in support of attorneys' fees and costs (ECF Nos. 156-157) it is unclear whether Plaintiffs are treating the "Johnson Defendants" (i.e., Delroy Johnson; eBay Seller Lenkoseller; and Bonanza Seller Lenkoseller) as one group of defaulting Defendants or three separate groups. Because Plaintiffs do not state that the Johnson Defendants should be treated as three separate groups, the Court will treat them as one. The Court will address the reasonableness of the hour calculations and fee requests for each of the two submitting firms in turn.

### i. Warner Norcross & Judd LLP Fee Request

Lyndsay Ott submitted the declaration in support of attorneys' fees for the lawyers at Warner Norcross & Judd LLP ("WNJ") who served as local counsel. ECF No. 156. Ms. Ott is "Senior Counsel" at WNJ, and the primary attorney responsible for this client and matter at WNJ. *Id.* at PageID.2699. Ms. Ott was assisted by Partner David Eberhard, Partner Matthew K. Casey, Staff Attorney Adam Cefai, (former) Associate Jane Kogan, and Associate Emily Rucker. *Id.* at PageID.7201-02. These attorneys provided support in all aspects of the case, from "high-level strategic counseling" to "assembly and review of the original pleadings[.]" *Id.*

All told, Ms. Ott provided documentation that litigation activities undertaken by WNJ from May 2016 to February 22, 2020 comes to a total of 189.3 combined hours of attorney time. *Id.* at PageID.2705. WNJ requests $2,919.10 in fees and $161.39 in costs from the Johnson Defendants, or $3,080.49 total. *Id.* at PageID.2705.

### a. Number of hours

WNJ has requested fees relating to a total of 189.3 attorney hours *Id.* at PageID.2705. The Court has reviewed the timesheets submitted with the Ott Declaration, which include a concise explanation for the tasks completed during all the billed time. Based on its review, the Court concludes that 189.3 attorney hours over the course of this case—which

began in June 2016—between several attorneys is a reasonable number of hours for local counsel to have expended on this litigation.

### b. Billing rate

Ms. Ott included the following table showing the hourly rates charged by each attorney involved in this case:

| Attorney | Hourly Rate(s) from 2016-2020 |
|---|---|
| Lyndsay S. Ott | $285 - $360 |
| David Eberhard | $480 - $545 |
| Matthew Casey | $515 - $575 |
| Jane Kogan | $340 - none |
| Adam Cefai | $210 - $255 |
| Emily Rucker | $265 - $345 |

Ms. Ott contends that based on the proposed billing rates of each attorney and the number of hours each employee billed, the total fees in this action are $61,301.10. ECF No. 156, PageID.2705 (citing Exhibit C, ECF No. 156-4). This amounts to $2,919.10 per Defendant group. *Id.*

In the Court's prior Order, it determined that the appropriate hourly rates based on the State Bar of Michigan's 2017 Economics of Law Practice Attorney Income and Billing Rate Summary[1] ("hereinafter 2017 Report") was as follows:

---

[1] Ms. Ott attaches this document as Exhibit B to her instant Declaration. *See* ECF No. 156-3.

7

| Attorney | Hourly Rate(s) from 2016-2020 |
|---|---|
| Lyndsay S. Ott | $282 |
| David Eberhard | $450 |
| Matthew Casey | $450 |
| Jane Kogan | $320 - $340 |
| Adam Cefai | $195 - $235 |
| Emily Rucker | $245 - $305 |

ECF No. 118, PageID.2274-76. The Court determined that it would reimburse Ms. Ott, Mr. Eberhard, and Mr. Casey at rates consistent with the 2017 Report because they were reasonable and based on the hourly rates for similarly situated attorneys practicing in Michigan. *Id.* at PageID.2273. For the reasons stated in that Order, the Court will reimburse the attorneys at these hourly rates for the Johnson Defendants, unless otherwise stated below.[2]

### 1. Lyndsay Ott

In the Court's prior Order, it determined that an appropriate billing rate for Ms. Ott, an attorney with 6-10 years of experience, was $282 per hour. ECF No. 118, PageID.2274. Ms. Ott and WNJ partner David Eberhard are the only WNJ attorneys who worked on this action after

---

[2] Exhibit C also includes one entry for a "B.D. Wassom," for 0.3 hours to "review and edit draft documents" related to the "default judgment motion." *See* ECF No. 156-4, PageID.2738. Ms. Ott's declaration does not identify who B.D. Wassom is, whether they are an attorney or paralegal, or how many years of experience they have. As WNJ does not identify this individual in any way, the Court will not reimburse WNJ for this entry.

8

the Court issued its prior order on attorneys' fees. *See* ECF No. 156-4, PageID.2738-41. Since 2018, Ms. Ott has presumptively gained an additional two years of practice experience, though she has consistently classified herself as "Senior Counsel." The 2017 Report does not have a "Senior Counsel" option, but the 75th percentile reimbursement for Senior Associate is $315, while for "Of Counsel" it is 400. ECF No. 156-3, PageID.2720. The Court finds that for hours billed between August 22, 2018 and February 22, 2020, an hourly billing rate of $325 is exceedingly fair. For all hours billed before August 22, 2018, the Court will apply an hourly billing rate of $282, as it did in its prior Order.

In the chart provided as Exhibit C, Ms. Ott billed 152.7 hours of work. ECF No. 156-4. 108.7 of those hours were billed prior to August 2018 and 44 of those hours were billed after August 2018. *Id.* Therefore, the Court will award Ms. Ott $ 2,140.63 attorneys' fees for her work on this litigation pertaining to the Johnson Defendants.

### 2. David Eberhard and Matthew Casey

In the Court's prior Order, it determined that an appropriate billing rate for Mr. Eberhard and Mr. Casey was $450 per hour.[3] In the chart

---

[3] Mr. Eberhard also billed for this action after the Court's prior Order. While he has presumably gained an additional two years of practice experience since that Order (Mr. Eberhard now has 26 years of practice experience), his billing ranges have not changed. The Court previously determined Mr. Eberhard as a partner with 16-25 years of experience. ECF No. 118, PageID.2274-75. While Mr. Eberhard now fits into the 26-30 years of experience category, along with Mr. Casey, the Court in its prior order determined that $450 per hour was appropriate for an attorney with 26-30 years of experience as well. *Id.*

9

provided as Exhibit C, Mr. Eberhard billed 10.5 hours of work and Mr. Casey billed 24.2 hours of work. Accordingly, the Court will award Mr. Eberhard $225 in attorneys' fees and will award Mr. Casey $518.57 in attorneys' fees for their work on this litigation pertaining to the Johnson Defendants.

### 3. Adam Cefai, Jane Kogan, Emily Rucker

In the Court's prior Order, it determined that an appropriate billing rate for Mr. Cefai was $195-$235 per hour, for Ms. Kogan $320-$340 per hour, and for Ms. Rucker $245-$305 per hour. Mr. Cefai billed 0.3 hours, Ms. Kogan billed 0.3 hours, and Ms. Rucker billed 1 hour, respectively. Therefore, the Court will award Mr. Cefai $2.82, will award Ms. Kogan $4.56, and will award Ms. Rucker $12.61, respectively, for their work on this litigation pertaining to the Johnson Defendants.

In sum, the Court awards Warner Norcross & Judd LLP fees in the amount of $2,904.19 and costs in the amount of $161.39,[4] for a total of $3,065.58.

### ii. Venable LLP Fee Request

Marcella Ballard submitted the declaration in support of attorneys' fees for the lawyers at Venable LLP ("Venable"). ECF No. 157. Ms. Ballard is a partner at Venable, and the billing attorney responsible for these clients at Venable. *Id.* at PageID.2745. Ms. Ballard oversaw all of

---

[4] The Court has reviewed the costs listed, which are primarily composed of photocopies, travel, transcripts, and postage. ECF No. 156-5. These are all reasonably incurred costs given the nature of this litigation.

10

Venable's work, and was assisted by Victoria Danta (former senior associate – IP litigation), Melissa McLaughlin (former senior associate, now counsel – commercial litigation), Samantha Rothaus (former mid-level associate – IP litigation), Cindy Zuniga (junior associate – commercial litigation), Maria Sinatra (junior associate – IP litigation), and Matthew Renick (former junior associate – IP litigation). *Id.* at PageID.2747-2750; *see also* ECF No. 157-2. Two paralegals—Jennifer Spinning and Delia Green—also supported the attorneys throughout the proceedings. ECF No. 157, PageID.2754. Venable calculates a total of 647.70 combined hours of attorney and paralegal time. *Id.* at PageID.2754.

### a. Number of hours

Venable has requested fees for 647.70 attorney hours. ECF No. 157, PageID.2754. The Court has reviewed the timesheets submitted with Ms. Ballard's declaration, which include a clear, concise explanation for the tasks completed during all the billed time. ECF No. 157-4; ECF No. 157-5. Based on this review, the Court concludes that 647.70 hours over the course of this case—which began in May 2016—between several attorneys is a reasonable number of hours for counsel to have expended on this litigation.

### b. Billing rate

In the Court's prior Order, it utilized the 2017 Report to determine reasonable rates for the Venable attorneys and paralegals—as it did with

11

WNJ. This Court determined the appropriate hourly rates were the following:

| Attorney/Paralegal | Hourly Rate(s) from 2016-2020 |
|---|---|
| Marcella Ballard | $575 |
| Victoria Danta | $350 |
| Melissa McLaughlin | $400 |
| Samantha Rothaus | $325 |
| Cindy Zuniga | $250 |
| Maria Sinatra | $250 |
| Matthew Renick | $250 |
| Delia Green | $187.50 |
| Jennifer Spinning | $187.50 |

ECF No. 118, PageID.2279-82. The Court determined that it would reimburse the Venable attorneys and paralegals at rates consistent with the 2017 Report because they were reasonable and based on the hourly rates for similarly situated attorneys practicing in Michigan. *Id.* For the reasons stated in that Order, the Court will reimburse the attorneys at these hourly rates for the Johnson Defendants. As explained further below, the Court will consider Ms. Sinatra separately, as she is the only Venable attorney who expended additional attorney hours since the Court's prior order.

Ms. Ballard provided a chart of all attorney and paralegal hours, adjusted to prorate for defaulted Defendants. However, in the Court's prior order, it found that the chart contained errors and miscalculations and created a corrected chart to denote the numbers for all parties, and the apparent effective average hourly rate charged by each listed person. That chart is reproduced here (without the row indicating the total fees for the nine defaulting Defendants relevant to that order):

| Attorney/ Professional | Billed Hours | Approved reasonable hourly billing rate | Total fees for relevant proceedings | Prorated fees per defendant (total fees / 21) |
|---|---|---|---|---|
| Marcella Ballard | 74.9 | $575 | $43,067.50 | $2,050.83 |
| Victoria Danta | 149.9 | $350 | $52,465.00 | $2,498.33 |
| Melissa McLaughlin | 182.6 | $400 | $73,040.00 | $3,478.10 |
| Samantha Rothaus | 25.2 | $325 | $8,287.50 | $394.64 |
| Cindy Zuniga | 5.9 | $250 | $1,475.00 | $70.24 |
| Maria Sinatra** | 25.2 | $250 | $6,300.00 | $300.00 |
| Matthew Renick | 2.2 | $250 | $550.00 | $26.19 |
| Delia Green | 4.2 | $187.50 | $787.50 | $37.50 |
| Jennifer Spinning | 15.8 | $187.50 | $2,962.50 | $141.07 |
| **TOTALS** | 486.2 | | $188,935.00 | |

ECF No. 118, PageID.2283.

The Court will continue to use this chart because Ms. Ballard's updated attorneys' fees chart, ECF No. 157-4, indicates that only Ms. Sinatra has worked on this matter since the Court's prior order. Therefore, except for Ms. Sinatra, this chart still represents the total hours expended by the Venable law firm for this matter.

13

With respect to Maria Sinatra, Exhibit C indicates that she expended an additional 1.4 hours on this action since the Court's prior order on attorney fees (ECF No. 118). *See* ECF No. 157-4, PageID.2816. Two of these entries were billed at a rate of $510 per hour, while the third entry was billed at a rate of $570 per hour. Ms. Sinatra's Venable attorney biography still denotes Ms. Sinatra as a traditional associate (i.e., not a senior associate, partner, or counsel for the firm), as she was in 2018. ECF No. 157-2, PageID.2774-2775. In 2019 and 2020, Ms. Sinatra was a third- and fourth-year associate. A rate of $250 puts Ms. Sinatra between the mean and 75th percentile for all first through fifth year associates practicing in Michigan; and between the twenty-fifth and mean of all out-of-state attorneys practicing in Michigan. 2017 Report, ECF No. 156-3, PageID.2720-21. Therefore, the Court will continue to apply a reasonable $250 hourly rate for Ms. Sinatra for these final three entries. Additionally, as these three entries indicate that Ms. Sinatra worked exclusively on the Johnson Defendants' default judgment proceeding, these fees will not be divided amongst the 21 Defendant groups. Rather, Ms. Sinatra's 2019-2020 fees will be assessed against the Johnson Defendants alone.

With Ms. Sinatra's additional hours in mind, an updated chart is produced below:

| Attorney/ Professional | Total Billed Hours | Billed Hours for Johnson Defendants | Approved reasonable hourly billing rate | Total fees for relevant proceedings | Prorated fees per defendant (total fees / 21) |
|---|---|---|---|---|---|
| Marcella Ballard | 74.9 | | $575 | $43,067.50 | $2,050.83 |
| Victoria Danta | 149.9 | | $350 | $52,465.00 | $2,498.33 |
| Melissa McLaughlin | 182.6 | | $400 | $73,040.00 | $3,478.10 |
| Samantha Rothaus | 25.5 | | $325 | $8,287.50 | $394.64 |
| Cindy Zuniga | 5.9 | | $250 | $1,475.00 | $70.24 |
| Maria Sinatra** | 26.6 | 1.4 | $250 | $6,650.00 | $300.00 + $350.00 = $650 |
| Matthew Renick | 2.2 | | $250 | $550.00 | $26.19 |
| Delia Green | 4.2 | | $187.50 | $787.50 | $37.50 |
| Jennifer Spinning | 15.8 | | $187.50 | $2,962.50 | $141.07 |
| **TOTALS** | 487.6 | | | $189,285.00 | $9,346.90 |

Accordingly, the Court will award Ms. Ballard $2,050.83 in attorneys' fees for her work on this case pertaining to the Johnson Defendants. Likewise, the Court awards Victoria Danta $2,498.33; Melissa McLaughlin $3,478.10; Samantha Rothaus $394.64; Cindy Zuniga $70.24; Maria Sinatra $650; Matthew Renick $26.19; Delia Green $37.50; Jennifer Spinning $141.07. In total, the Court awards Venable LLP $9,346.90 in attorney and paralegal fees.

### c. Additional costs & investigation costs

The Venable firm has also requested $529.39 in costs. ECF No. 157, PageID.2754-55. Venable has included a chart explaining these costs in Ms. Ballard's declaration and a sheet outlining specific costs. *Id. See also*

ECF No. 157-5. The Court has reviewed the costs listed, which are primarily composed of travel and lodging, as well as attempts to serve the defendants through commercial delivery services; several of whom resided in other countries. These are all reasonably incurred costs given the nature of this litigation and the Court will therefore award the Venable firm the $529.39 in costs.

The Venable firm also seeks $32,846.53 in investigation costs split amongst the 21 Defendant groups. LSS Consulting, Inc., conducted investigations of the counterfeit sales on eBay and monitored them for several months to determine the identities of the sellers. ECF No. 157-6. The Court previously determined that $32,846.53 was a reasonable amount. ECF No. 118, PageID.2284. Therefore, the Court will award the Venable firm $1,564.12 in investigation fees and costs for the Johnson Defendants.

### III. Conclusion

For the foregoing reasons, the Court will award the Warner Norcross & Judd LLP firm a total of $3,065.58 in costs and fees, and the Venable LLP firm a total of $11,440.41 in costs and fees.

**IT IS HEREBY ORDERED** that:

A. North Atlantic's Motion for Default Judgment and Related Relief as to the Johnson Defendants is **GRANTED**;

B. Default Judgment, pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2, is hereby entered against the

Johnson Defendants for each and all of the Counts alleged in North Atlantic's Complaint in the amount of **$200,000**, jointly and severally, under the Lanham Act (15 U.S.C. § 1117(c));

C. In addition to the above, North Atlantic is awarded its reasonable attorneys' fees, costs, and investigative fees, in the above-listed amounts, pursuant to the Lanham Act (15 U.S.C. § 1117) and Copyright Act (17 U.S.C. § 505);

D. The Johnson Defendants, and their officers, agents, servants, employees, and attorneys, and all those in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, are forever enjoined and restrained from, directly or indirectly, anywhere in the world:

1. Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any counterfeit or infringing ZIG-ZAG® brand cigarette paper products, including but not limited to ZIG-ZAG® 1 ¼ Size French Orange ("ZIG-ZAG® Orange"), or any cigarette paper products bearing:

      i. Infringing or counterfeit versions of the ZIG-ZAG® Trademarks[5], the NAOC® Trademarks[6], the NAOC© Copyright[7], and/or the ZIG-ZAG® Orange Trade Dress[8], which appear alone or in combination on all cartons and booklets of ZIG-ZAG® Orange cigarette paper products distributed by North Atlantic in the United States; and/or,

      ii. The false statement that such products are "Distributed by North Atlantic Operating Company, Inc." or otherwise under the control or supervision of North Atlantic, when they are not;

2. Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell,

---

[5] Defined as the marks of U.S. Registration Nos. 610,530 (ZIG-ZAG (stylized)); 1,127,946 (ZIG-ZAG (Word Mark)); 2,169,540 (Smoking Man Design (Circle Border)); 2,169,549 (Smoking Man Design (No Border)).

[6] Defined as the marks of U.S. Registration Nos. 2,664,694 and 2,664,695 (NORTH ATLANTIC OPERATING COMPANY INC. and Gear Design); and 2,610,473 and 2,635,446 (NORTH ATLANTIC OPERATING COMPANY (Word Mark)).

[7] Defined as the work of the federal copyright registration for the visual material/computer graphic titled "North Atlantic Operating Company, Inc." (VAu 464-855).

[8] Defined as the distinctive design elements comprising the overall look and feel of ZIG-ZAG® Orange packaging (booklets and cartons), including at least the following: (1) ZIG-ZAG® and NAOC® Trademarks, (2) NAOC© Copyright, (3) gold-fill lettering and design elements, (4) French phrases such as "Qualite Superieure" and "Braunstein Freres France," and (5) the express statements that the products are "Made in France" or "Imported French", or "Distributed by North Atlantic Operating Company, Inc."

selling, or otherwise distributing or disposing of, in any manner, any purported North Atlantic products that are not actually produced, imported, or distributed under North Atlantic's control or supervision, or approved for sale in the United States by North Atlantic in connection with the ZIG-ZAG® Trademarks, the NAOC® Trademarks, the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress;

3. Committing any acts calculated to cause purchasers to believe that counterfeit or infringing ZIG-ZAG® cigarette paper products, including ZIG-ZAG® Orange, originate with North Atlantic, when they do not;

4. In any way infringing or damaging the ZIG-ZAG® or NAOC® Trademarks, the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress, or the value or goodwill associated therewith;

5. Attempting, causing, or assisting in any of the above-described acts, including, but not limited to, enabling others in the above-described acts or passing on information to others to allow them to do so;

6. Destroying, altering, deleting, or otherwise disposing of any documents, records, or electronically stored information concerning the manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or other distribution or disposal of any product that has been, or is intended to be, sold in packaging containing, displaying,

or bearing the ZIG-ZAG® or NAOC® Trademarks, the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress; and/or

7. Forming or causing to be formed any corporation or other entity that engages in the above-described acts.

E. Any violation of any or all of the foregoing provisions shall be punishable by contempt of court, and such other, further relief this Court deems just and proper;

F. This Default Judgment may be served on the Johnson Defendants via electronic means; and,

G. The bond is hereby released.

Further, Plaintiffs are directed to submit a proposed judgment or order of dismissal within seven days of the date of this Order; alternatively, Plaintiffs must file a status report explaining what claims or parties remain and why this case should not be dismissed.

**IT IS SO ORDERED**.

DATED: June 26, 2020.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge